IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MARY KNIGHTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:02-CV-0284 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO REVERSE THE COMMISSIONER'S DECISION
AND REMAND FOR FURTHER ADMINISTRATIVE ACTION**

Plaintiff MARY KNIGHTON, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and REMANDED.

I.
THE RECORD

Plaintiff applied for supplemental security income (SSI) benefits under Title XVI of the Social Security Act on March 7, 2000, with a protected filing date of February 16, 2000

(Transcript [hereinafter Tr.] 64, 67-68), and an alleged onset date of November 1, 1994.  (Tr. 64, 67).[1]  Plaintiff claims to have impairments which include social anxiety disorder, agoraphobia, and depression manifested in panic attacks and plaintiff's inability to leave the house.  (Tr. 71, 73, 90, 94).  It was determined at the administrative level that plaintiff had not engaged in substantial gainful activity since she filed her application for benefits. (Tr. 19).  Plaintiff was born August 31, 1956 (Tr. 67), and the record shows she possesses a high school diploma.  (Tr. 77).  Plaintiff listed her past relevant work to include positions as a carpet cleaner and bartender and the ALJ so found.  (Tr. 14, 72).

Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on May 23, 2001.  (Tr. 24-41).  On June 11, 2001, ALJ Larry E. Johnson rendered an unfavorable decision, finding plaintiff not entitled to benefits at any time relevant to the decision.  (Tr. 15-19).[2]  The ALJ determined plaintiff retained the residual functional capacity for "the performance of unskilled work activities in a vocational environment requiring little public, supervisory, or co-worker interaction."  (Tr. 18).  In making such a finding, the ALJ determined plaintiff could not perform her past relevant work.  (Tr. 19, 19a).  On August 1, 2002, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr.7-9), rendering the ALJ's decision the final decision of the defendant Commissioner.  Plaintiff now seeks judicial review.

---

[1]Plaintiff's application lists the onset date as November 1, 1994 (Tr. 67), however, in her "Disability Report Adult," she listed the onset date as November 20, 1994, the day after her husband committed suicide.  In his opinion, the ALJ refers to the onset date as November 1, 1994.  (Tr. 15).

[2]The last page of the ALJ's decision, page 6 of 6, was not originally included in the record sent to the Court.  It should have been included in the record at Tr. 20.  However, because another document exists at Tr. 20, the Court shall refer to this document, page 6 of the ALJ's opinion, and received from the parties, as Tr. 19a.

II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

III.
ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision. To this extent, plaintiff presents the following issues:

1. Whether defendant's finding as to plaintiff's residual functional capacity (RFC) is supported by substantial evidence;

2. Whether defendant met her burden of proof to show plaintiff, considering her age, education, RFC and work experience, could perform jobs existing in significant numbers in the national economy (excluding plaintiff's past work); and

3. Whether the ALJ failed to consider or make a finding as to whether plaintiff could maintain employment.

IV.
MERITS

A.
RFC Finding

Plaintiff argues defendant's finding as to plaintiff's residual functional capacity (RFC), that plaintiff could perform, "unskilled work activities in a vocational environment requiring little public, supervisory, or co-worker interaction," (Tr. 18, 19a), is not supported by substantial evidence. Specifically, plaintiff takes issue with the ALJ's conclusion to only partially credit the opinion of Dr. Claude W. Betty, because he is not a mental health professional but is plaintiff's treating general practitioner. (Plaintiff's Brief at 11). Plaintiff argues the ALJ rejected Dr.

Betty's opinion that plaintiff was unable to be in groups of people or crowds and that plaintiff had a poor ability to respond to change/stress in a work setting (*Id.*), without considering the following criteria as required by Fifth Circuit precedent in *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)(*citing Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000):

1) the length of treatment;
2) the frequency of examinations;
3) the nature and extent of the relationship;
4) the support provided by other evidence;
5) the consistency of the opinion with the record; and
6) the doctor's specialization.

Defendant, however, argues that it appears the ALJ considered the above factors albeit in narrative form, when he evaluated Dr. Betty's opinions. (Tr. 17-19). While the ALJ decision does not enumerate the six factors identified in *Myers v. Apfel*, *supra*, and discuss each factor individually, neither existing precedent nor *Myers v. Apfel* requires an analysis be set forth in the record. Instead, *Myers v. Apfel* merely requires that the ALJ present good cause for rejecting a treating physician's opinion and that he should weigh the evidence and credibility of the conflicting evidence. *See Myers v. Apfel, supra*, at page 621. Clearly, the ALJ considered the medical records provided by Dr. Betty and his opinions in conjunction with the testimony of plaintiff and the consultive psychological evaluation completed by Dr. William Kleinpeter on May 21, 2000. (Tr. 126-133). The ALJ decision also reflects the ALJ presented a sufficient enough basis for rejecting portions of Dr. Betty's findings and giving more weight to the opinion of Dr. Kleinpeter, a clinical psychologist, to avoid error.

Plaintiff further argues the ALJ failed to note the opinions of two state agency psychiatrists who opined that plaintiff was moderately limited in the ability to respond to

changes in the work setting, opinions plaintiff says are consistent with Dr. Betty's. (Plaintiff's Brief at 11-12). In his opinion however, the ALJ states, "Non-examining mental health consultants of the state agency concluded that Ms. Knighton was capable of performing work tasks in environments with little public or co-worker contact. (Exhibit 5F)." Exhibit 5F contains the report of one of these state agency non-examining mental health consultants referred to by plaintiff at Tr. 136. The ALJ included this assessment in his RFC determination as evidenced by his finding that plaintiff could perform, "unskilled work activities in a vocational environment requiring little public, supervisory, or co-worker interaction." (Tr. 18).

Plaintiff also complains that while the ALJ considered the opinion of Rhonda Graham, a licensed professional counselor who treated plaintiff, he erred when he discounted her opinion which was, "I do not see Mary being able to go to work for quite some time if ever." (Tr. 172). Plaintiff bases this alleged error upon the ALJ's mis-characterization of Ms. Graham as a non-medical doctor nor a mental health specialist. (Plaintiff's Brief at 12, Tr. 17). The ALJ did not explain the basis for his determination that Ms. Graham was not a mental health professional or specialist and the basis is not apparent from the record review conducted by the Court. This issue, however, need not be addressed further since remand is recommended on other grounds. Although the regulations make clear that an opinion by a medical source regarding a claimant's RFC or disability status, is not entitled to 'any special significance' because the final responsibility for deciding those issues is reserved to the Commissioner, *see* 20 C.F.R. §404.1527(e), characterizing a medical source as a lay source could constitute error. It appears the ALJ did consider Ms. Graham's opinion but discounted it, primarily because she was not a mental health specialist. (See ALJ opinion, "She [plaintiff] is not under any dedicated treatment

by a mental health specialist." at Tr. 18).

Finally, plaintiff contends the ALJ failed to give proper consideration to the RFC assessments provided by state agency psychiatrists. (Plaintiff's Brief at 13). Specifically, plaintiff complains the ALJ used only portions of such assessments to support his position and made no mention of the "moderate" limitations proposed by them. (*Id.*). For example, Dr. Margaret Meyer performed an assessment on June 8, 2000 and determined plaintiff was "moderately limited" in her ability to sustain an ordinary routine without special supervision; her ability to work in coordination with or proximity to others without being distracted by them; her ability to interact appropriately with the general public; her ability to accept instructions and respond appropriately to criticism from supervisors; her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; her ability to respond appropriately to changes in the work setting; her ability to travel in unfamiliar places or use public transportation; and her ability to set realistic goals or make plans independently of others. (Tr. 135-136). In her conclusion, Dr. Meyer determined plaintiff, "[R]etains the ability to perform work tasks. She can work in an environment with little public or co-worker contact and routine changes to the environment." (Tr. 137). Such functional capacity assessment was based upon the limitations listed above. Similarly, state agency psychiatrist Lyman Phillips completed an assessment on November 7, 2000, and determined plaintiff was "moderately limited" in her ability to understand and remember detailed instructions; her ability to carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; her ability to work in coordination with or proximity to others without

being distracted by them; her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; her ability to accept instructions and respond appropriately to criticism from supervisors; and her ability to respond appropriately to changes in the work setting. (Tr. 152-153). In his conclusion, Dr. Phillips determined plaintiff retained the functional capacity to perform unskilled work. (Tr. 154). Again, such conclusion was based upon the assessment as a whole, including the list of moderate limitations. The ALJ concluded plaintiff retained the ability to perform unskilled work activities in a vocational environment requiring little public, supervisory, or co-worker interaction." (Tr. 18). There remains, however, an issue not explicitly addressed and that is the issue of plaintiff's panic attacks. Nowhere does the ALJ find plaintiff's reports of her panic attacks to not be credible. In fact, in the ALJ opinion, the ALJ recited, "Ms. Knighton has an anxiety related disorder which is primarily manifested by panic attacks. This constitutes a 'severe' impairment." (Tr. 16). Further, as discussed above, the state agency physicians who assessed plaintiff's limitations appear to give credibility to plaintiff's panic attacks, not to discount them. More importantly, the VE testified plaintiff's panic attacks, if they occurred at work, would probably terminate employment. The VE said,

> One thing that, that needs to be considered here is panic attacks usually draw other people's attention for, because of verbal outbursts or behavioral outbursts, whatever you want to call it. And that it (sic) something we need to consider too, because it's not just the absence of, from the job once a month, it's the disruption caused, if, if the attack happens at the work place. And then she has to, she or he, has to remove himself from the work place. This particular factor, particularly if it's a good disruption, would probably terminate employment right there.

(Tr. 39-40). It is important that this testimony from the VE occurred after plaintiff's testimony wherein she described her panic attacks and the effect they had on her. Therefore, the omission

from the hypothetical of plaintiff's panic attacks is critical, and the failure to follow up on the VE testimony regarding the significant impact of such attacks was error. The question of the panic attacks and their effect on her coworkers and the disruption to the workplace, based upon the testimony of the VE, could be determinative of plaintiff's ability to be gainfully employed. If not for the panic attacks, the Commissioner's decision might very well be affirmed. However, because the panic attacks were not discounted or found to not be credible, the ALJ erred in not fully discussing them. Additionally, the ALJ could not have relied on the state agency physician assessments to determine the effect of panic attacks on the workplace environment. The physicians are qualified to assess plaintiff's impairments and their severity, but the effect such an impairment would have on the workplace is a determination within the province of the VE. Based upon the explicit testimony by the VE in this regard, the ALJ erred by not discussing the issue further, and the issue is remanded for further reconsideration. On remand, the ALJ should make explicit findings regarding plaintiff's episodic panic attacks and their effect on her ability to obtain substantial gainful employment.

B.
Significant Number of Jobs in the National Economy

Plaintiff next takes issue with the finding by the ALJ that a significant number of jobs, excluding plaintiff's past relevant work, exist in the national economy which plaintiff could perform. Specifically, plaintiff complains first, that the hypothetical posed to the Vocational Expert (VE) did not incorporate all the limitations recognized by the ALJ. Second, plaintiff argues the VE failed to provide evidence as to the number of jobs available to plaintiff with the limitations set forth in the hypothetical. (Plaintiff's Brief at 15).

In her first argument, plaintiff takes issue with the ALJ's hypothetical because he failed to include a limitation for unskilled work. (Plaintiff's Brief at 15). A review of the hearing transcript shows plaintiff is correct. The ALJ discussed "work at all exertional levels" with the VE but at no time mentioned the category of unskilled work. (Tr. 36-41). Nor did the ALJ request the VE to take administrative notice of the number of unskilled jobs. (Plaintiff's Brief at 15). Defendant rebuts saying,

> [I]t is clear from the context of the ALJ's hypothetical questions and his decision that the vocational expert was addressing jobs available in the unskilled occupational base. Specifically, if the medical-vocational guidelines apply on a particular case, the Social Security Regulations take administrative notice of the existence of a certain number of unskilled jobs at each exertional level based on information from governmental and other publications. 20 C.F.R. § 416.966(d). Thus, administrative notice is taken of the existence of 200 unskilled sedentary jobs, 1,600 sedentary and light unskilled jobs, and 2,500 unskilled medium, light and sedentary jobs.

(Defendant's Brief at 10, footnote citations omitted). While defendant may be correct that in certain cases the Secretary has taken administrative notice of the existence of many jobs in the national economy, *See Rivers v. Schweiker*, 684 F.2d 1144, 1153 (5th Cir. 1982) citing *Torres v. Schweiker*, 677 F.2d 167, 168 (1st Cir. 1982), the undersigned does not agree that it is <u>clear</u> from the context of the hypothetical that the VE was addressing unskilled jobs. The defendant bore the burden to produce evidence of the number of jobs which plaintiff was capable of performing. It is not clear this was done. Consequently, upon remand this issue should be addressed.

## C.
### Sustained Work Activity

Finally, plaintiff contends the ALJ erred because while he found her capable of performing work which existed in significant numbers in the economy, he failed to demonstrate that plaintiff could sustain such work activity given her nonexertional impairments. (Plaintiff's

Brief at 16-17). It does not appear from the administrative record that plaintiff ever argued in her application for benefits or at the hearing, that her condition occurs intermittently so as to periodically prevent her form working. If true, the ALJ was not obligated to make a separate finding that plaintiff could sustain work activity. *See Wise v. Barnhart*, 2004 U.S. App. LEXIS 12019 at *3-4, (To the extent that Wise argues that his case should be remanded in accord with *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), for a finding whether he can maintain employment, Wise did not assert that his condition only periodically precluded him from working and did not offer medical evidence that his condition would intermittently prevent him from maintaining employment or functioning in the employment context. Accordingly, it would not necessarily have been required that the case be remanded for the administrative law judge to make such a determination. *See Frank v. Barnhart*, 326 F.3d 618, 619-20 (5th Cir. 2003)). If, however, plaintiff's claim under this ground is that plaintiff's periodic panic attacks prevent her from maintaining employment, then, for the reasons discussed above, this issue should be addressed on remand.

It is the recommendation of the Magistrate Judge to the United States District Judge that the administrative decision finding plaintiff KNIGHTON not disabled be REVERSED, and that this case be REMANDED for further consideration at Step Five of the sequential step process as outlined above.

## V.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the

defendant Commissioner be REVERSED and REMANDED.

VI.
INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 17th day of February 2006.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).